# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JAMES LEE COBB,**

      **Petitioner,**

**v.**                                                    **Case No.: 8:18-cv-283-CEH-SPF**
                                                        **Case No.: 8:14-cr-123-CEH-SPF**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## ORDER

James Lee Cobb moves under 28 U.S.C. § 2255 to vacate his convictions and sentence for conspiracy, wire fraud, identify theft, and possession of a firearm by a convicted felon. After pleading guilty, he is currently serving a guidelines sentence of 324 months. He proceeds on his second amended motion under § 2255. (Civ. Docs. 88, 96) Cobb challenges the validity of his guilty plea, claims he received ineffective assistance of both trial and appellate counsel, and challenges his firearm possession conviction as unconstitutional. He is entitled to no relief.

## I.    Background

Cobb was charged in a superseding indictment with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One); substantive wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Two through Five); aggravated identify theft, in violation of 18 U.S.C. §§ 1028A and 2 (Counts Six through Nine); and possession of a firearm and ammunition after having been convicted of a felony,

in violation of 18 U.S.C. § 922(g) and punishable under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (Count Ten). (Crim. Doc. 37) On the morning of trial, Cobb pleaded guilty to all charges without a plea agreement. (Crim. Doc. 134)

The district court sentenced Cobb to concurrent terms of 240 months on Counts One through Five, 300 months on Count Ten, followed by concurrent 24-month terms on Counts Six through Nine, for a total term of 324 months. (Crim. Docs. 178 at 2 and 238 at 224–25) The district court also imposed a five-year term of supervised release. (*Id.*) Cobb appealed his sentence, and the circuit court affirmed. *United States v. Cobb*, 842 F.3d 1213 (11th Cir. 2016).

In affirming Cobb's 324-month sentence, the circuit court summarized the facts of this case, *id.* at 1215–16:

> Beginning in approximately 2011, and continuing until 2013, Defendant and his wife Eneshia Carlyle, stole identities from patients at the Department of Veterans' Affairs ("VA"), ambulance services, hospitals, and clinics, to electronically file fraudulent tax returns. Defendant and his wife used prepaid debit cards to access the refunds produced by these fraudulent tax returns.

> The investigation into Defendant began in August 2012, following a routine traffic stop by the Tampa Police Department. Defendant consented to a search of his vehicle, and officers found receipts and debit cards imprinted with names other than Defendant's.

> Following a trash pull at Defendant's residence— which revealed several debit cards with various names on them, a sheet containing personally identifying information, and a receipt for a cash-back transaction— officers executed a search warrant at the residence. Officers found over 300 debit cards, as well as medical records from the VA, ambulance services, and hospitals. These records

2

contained approximately 7,000 pieces of personal identifying information. The search also revealed two firearms. In addition, officers found three keys to storage units inside of Defendant's wife's purse. A subsequent search of those storage units revealed trash bags filled with medical records containing personal identifying information, prepaid debit cards, and a Mercedes.

## II.  Discussion

Cobb now moves to vacate his convictions and sentence and claims that: (1) his guilty plea was unknowing and involuntary; (2) counsel was ineffective for advising him to plead guilty; (3) counsel was ineffective for not suppressing illegally-seized evidence; (4) appellate counsel was ineffective for not challenging the validity of his guilty plea; and (5) his § 922(g) conviction is unconstitutional after *Rehaif v. United States*, 588 U.S. 225 (2019). (Civ. Docs. 88 and 96) The United States responds that Grounds One and Five are procedurally defaulted and that all five claims lack merit.[1] (Civ. Doc. 95)

### Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."

---

[1] The United States correctly argues that Cobb procedurally defaulted Grounds One and Five by not raising them before the district court or on direct appeal. The district court rejects his claims as meritless. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the petitioner to demonstrate that he was denied the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 693-94. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). When evaluating performance, the district court must apply a strong presumption that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### A.    Grounds One and Two: Plea Colloquy Claims

In Grounds One and Two, Cobb raises related claims challenging the validity of his guilty plea.

1.    **Background**

One week before trial, on November 24, 2014, the district court conducted a hearing on a motion in limine filed on behalf of Cobb by trial counsel.  (Crim. Doc. 253)  During that hearing, Cobb moved for new counsel because he was dissatisfied with trial counsel's representation.[2] (Crim. Doc. 82)  He complained that trial counsel failed to provide him with discovery materials, refused to file a speedy-trial motion, and refused to pursue his theory that a video recording of law enforcement's execution of a search warrant was incomplete.  (Crim. Doc. 253 at 14–19)  The district court expressed concern that Cobb made similar complaints about his first court-appointed counsel, and ultimately, denied the motion for new counsel and concluded that "irreconcilable differences ha[d] not arisen[.]" (*Id*. at 4–5, 12, 9–23)  The district court advised that Cobb's trial would begin the following Monday, December 1, 2014, as previously scheduled.  (*Id*. at 29)

On the morning of trial, Cobb again expressed his dissatisfaction with trial counsel.  (Crim. Doc. 255 at 8) The district court explained that Cobb's complaints were "resolved to [its] satisfaction" and trial would begin as scheduled.[3]  (*Id*. at 8–9)

---

[2] This was Cobb's second motion for appointment of new counsel.  Cobb had already received new counsel because of his dissatisfaction with his first court-appointed counsel.  (Crim. Docs. 27–29)

[3] Additionally, the United States informed the district court that, after the motion hearing on November 24, Cobb expressed his desire to plead guilty.  (Crim. Doc. 255 at 13–14)  The United States drafted a plea agreement and gave it to Cobb's counsel who gave it to Cobb on November 26.  (*Id*.)  Cobb rejected the plea agreement on November 28, the Friday before trial.  (*Id*.)

The district court recessed the proceedings to wait for Cobb's attire to be delivered. (*Id.* at 6–11)

During that recess, Cobb decided to plead guilty to all charges without a plea agreement.[4]  (Crim. Doc. 134 at 4)  Cobb understood that he could proceed to trial without counsel and that it would be difficult to withdraw his guilty plea (*id.* at 4–7):

> Court:    Mr. Cobb, I have been advised by counsel that while we were on recess waiting for Miss Carlyle to bring your clothes for the jury trial, that you have decided that you'd like to enter a plea to the charges against you. Is that correct, sir?
>
> Cobb:    Yea.
>
> . . .
>
> Court:    [W]hile I denied your motion to dismiss counsel, which I interpreted as a request by you for me to appoint a new counsel, . . . I want you to understand that you do have the right to proceed to trial without counsel.  Do you understand that?
>
> Cobb:    Yes, ma'am.
>
> . . .
>
> Court:    You also need to understand that if you decide to enter your guilty plea today and that plea is accepted by me, then it becomes much more difficult, if not impossible, to change your mind later on. Do you understand that?
>
> Cobb:    Yes, ma'am.

---

[4] In his responsive affidavit, trial counsel avers that he "was fully prepared for trial" and that Cobb "unilaterally made the decision to plead guilty" on the morning trial was scheduled to begin.  (Civ. Doc. 45-1)

During his plea colloquy, Cobb confirmed that he understood his right to proceed to trial and that, by pleading guilty, he was waiving his right to present a defense to the charges or an objection to the evidence.  (*Id.* at 9–10, 21–24)  Cobb repeatedly confirmed that he was "pleading guilty of [his] own free will because [he] [is] guilty[]" and that no one forced or threatened him or made any promises or assurances to him regarding his decision to plead guilty.  (*Id.* at 13, 45–46)  Cobb stated to the district court, "I am entering a plea because I'm guilty."  (*Id.* at 45)  And, when the district court asked if he was "pleading guilty because [he] [is], in fact, guilty of these charges[,]" Cobb responded, "Yes, ma'am."  (*Id.* at 51)

Also, Cobb specifically expressed his satisfaction with trial counsel's representation (*Id.* at 10–11):

| | |
|---|---|
| Court: | Is there anything that you've asked your lawyer to do about your case which you believe Mr. Ciaravella has not done? |
| Cobb: | I advised—yes, we talked about what we needed to talk about. |
| Court: | Are there any matters that the court needs to be made aware of that . . . you did not put in your motion to dismiss, which we addressed this past Monday, that I need to be made aware of that you'd like for me to discuss with you and your counsel? |
| Cobb: | No, ma'am. |
| Court: | Is there anything that you believe your lawyer has done in an unsatisfactory manner, again, other than the motion to dismiss and the matters that we addressed on Monday? |

| | |
|---|---|
| Cobb: | No, ma'am. |
| Court: | Do you have any problems concerning issues or questions regarding the quality of the legal service you have been rendered in this case and, again, other than what we previously discussed on Monday? |
| Cobb: | No, ma'am. |
| Court: | Do you need to confer with your lawyer or anyone before proceeding in this hearing? |
| Cobb: | No, ma'am. |
| Court: | Are you fully satisfied with the advice and representation your counsel[] provided to you in this case? |
| Cobb: | Yes, ma'am. |

The district court described the essential elements of the offenses to which Cobb was pleading guilty, as well as the maximum sentence he faced, and Cobb expressed his understanding of those elements and penalties. (*Id*. at 15–17) He understood that "the sentence actually imposed by the court and the guidelines calculation determined by the court may be different from any estimate or prediction that [his] attorney has provided to [him][.]" (*Id*. at 19) Also, he understood that "if that estimate or prediction is incorrect or proves wrong, that [he] would still by bound by [his] guilty plea and could not withdraw it." (*Id*.) The district court found that Cobb was pleading guilty freely, voluntarily, and knowingly and with the advice of counsel, and Cobb voiced no objection to this finding. (*Id*. at 51–52)

8

Approximately five months later, on April 29, 2015, Cobb filed a *pro se* "Motion to Compel Counsel to Withdraw Plea," in which he argued that his guilty plea was involuntary. (Crim. Doc. 152)  He claimed, that on December 1, 2014, he "was completely unaware that he would commence trial and yet he found himself with the frightening realization that his trial was set to commence." (*Id.* at 1)  According to Cobb, he pleaded guilty "out of desperation" because he "had serious misgivings about his attorney's general preparedness" and "[saw] no option" other than to proceed to trial. (*Id.* at 2)  He further claimed that "he is innocent and entered the plea because, after sitting in court for nearly one hour waiting for trial clothes to arrive he felt completely defeated, overwhelmed, and exhausted through a lack of sleep."[5] (*Id.*)

The district court conducted a hearing on the motion to withdraw the guilty plea during which it heard testimony from Cobb and reviewed the transcript of his plea colloquy. (Crim. Doc. 236)  Because the record showed that Cobb's plea was knowing and voluntary, the district court denied the motion (*id.* at 24):

> Court:    [T]he motion that I have in front of me is a motion to withdraw because you don't believe your guilty plea was knowing and voluntary; and the record—the transcript of that plea colloquy, which has been filed, clearly reflects to the contrary.

---

[5] Cobb filed additional motions in which he repeated his complaints about trial counsel and sought to withdraw his guilty plea. (Crim. Docs. 150 and 151) Trial counsel also filed a motion to withdraw Cobb's guilty plea on Cobb's behalf and claimed, without any explanation, that Cobb's plea was unknowing and involuntary. (Crim. Doc. 155) The United States opposed the motions. (Crim. Doc. 156)

I asked you not once, but twice about that, and your response was yes, that you were doing it because that's what you wanted to do, that you were pleading guilty because you were in fact, guilty.

## 2. Analysis

In Ground One, Cobb claims his guilty plea was involuntary and unknowing (1) because he did not receive "real notice" of the essential elements of § 924(e), and (2) because he was misadvised that the maximum term of supervised release under § 924(e) was three years rather than five years. In his reply, he clarifies that his claim is based on the fact that, during his plea colloquy, "the court at no time outlined the elements or its penalties in regards to 924(e), and what the government was obligated to prove in order to obtain a conviction under § 924(e)(2)(A)(i) or (ii)." (Civ. Doc. 96 at 6) He repeats that he received no notice of "the elements that causes a 15 year mandatory minimum to life sentence as defined within 924(e)'s definition to be eligible for an ACCA designation." (*Id.* at 4)

In a related claim at Ground Two, Cobb claims that trial counsel was ineffective for advising him to plead guilty when the district court failed to adequately advise him of the essential elements and penalties under § 924(e). (Civ. Doc. 96 at 8–9) He argues that trial counsel "should have been aware of the government's failure to provide notice of the elements" and penalties. (Civ. Doc. 88-2) He urges the district court to allow him to withdraw his guilty plea and proceed to trial. (Civ. Doc. 96 at 7)

Once a guilty plea becomes final, a subsequently filed § 2255 motion "is ordinarily confined to whether the underlying plea was both counseled and voluntary.

If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." *United States v. Broce*, 488 U.S. 563, 569 (1989). "Rule 11(b) [of the Federal Rules of Criminal Procedure] sets out procedures that district courts must follow when accepting guilty pleas." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). Rule 11 is designed to address the "three core objectives" for a knowing and voluntary plea: (1) that the plea is free from coercion; (2) that the defendant understands the charges against him; and (3) that the defendant understands the consequences of his guilty plea. *Id.*

"There is no rigid formula or 'mechanical rule' for determining whether the district court adequately informed the defendant of the nature of the charges." *Presendieu*, 880 F. 3d at 1238. "Importantly, Rule 11 does not specify that a district court must list the elements of an offense." *Id.* "District courts must ensure one way or another, that the defendant knows and understands the nature of the offenses to which he or she is pleading guilty." *Id.* at 1239.

The record shows that Cobb's plea was both knowing and voluntary, and his efforts to invalidate that plea—whether by claiming ignorance of the charged offenses and penalties (Ground One) or by claiming ineffective assistance of counsel (Ground Two)—must fail. During the plea colloquy, the district court explained the essential elements of the § 922(g) offense charged in Count Ten, as well as the enhanced sentence Cobb faced as an armed career criminal under § 924(e), and Cobb affirmed his understanding (Crim. Doc. 134 at 16–17):

Court:        Count 10 of the indictment charges felon in possession of a firearm under 18 U.S.C. section 922(g), the elements of which are as follows: The defendant knowingly possessed a firearm in or affecting interstate or foreign commerce and, second, before possessing the firearm, the defendant had been convicted of a felony, a crime—that being a crime punishable by imprisonment for more than one year. . . .

              Count 10 carries a mandatory term of imprisonment of 15 years to life, and that's because of your armed career criminal status, a fine of not more than 250,000, a term of supervised release of not more than three years,[6] and a special assessment of $100.

              Do you understand those penalties, Mr. Cobb?

Cobb:         Yes, ma'am.

Court:        Do you have any questions regarding those penalties or the elements that I just advised you of?

Cobb:         No, ma'am.

Although the district court did not read to Cobb the statutory elements necessary to impose an enhanced sentence under § 924(e), it is clear that Cobb understood he faced an enhanced sentence as an armed career criminal, he was not coerced or forced to plead guilty, and he was satisfied with counsel's representation. Cobb's statements at the plea hearing "constitute a formidable barrier in any

---

[6] On Count Ten, Cobb faced a maximum term of supervised release of five years—not three years. Both the initial and final presentence reports correctly state, "The Court may impose a term of supervised release of not more than five years." (Crim. Doc. 119 at ¶ 115; Crim. Doc. 128 at ¶ 115)

subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11t6h Cir. 1994) ("There is a strong presumption that the statements under oath at a plea colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United State v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Furthermore, "[t]he ACCA does not create a separate offense, but merely provides for sentencing enhancements." *United States v. Harin*, No. 20-14497, 2024 WL 4563684, at *2 (11th Cir. Oct. 24, 2024) (citing *United States v. Ruo*, 943 F.2d 1274, 1275 (11th Cir. 1991)). Cobb offers no explanation to disavow his sworn admissions under oath that he understood he faced an enhanced sentence as an armed career criminal. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story . . . when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.); *see also Griffin v. United States*, No. 22-12476, 2023 WL 8724660, at *4 (11th Cir. Dec. 18, 2023) (affirming denial of § 2255 relief when neither the district court nor counsel advised defendant of § 924(c) elements because "the record indicates that [the defendant] understood the nature of the charges against him, understood the consequences of the plea, and was not coerced").

Furthermore, the fact that Cobb was misadvised during the plea colloquy that under § 924(e) he faced a maximum term of supervised release of three years rather

than five years is insufficient to invalidate his guilty plea.  The record shows that both the initial and final presentence report correctly state that, for Count Ten, Cobb faced a maximum term of supervised release of five years. (Crim. Doc. 119 at ¶ 115; Crim. Doc. 128 at ¶ 115)  And, at sentencing, Cobb neglected to raise any issue regarding the discrepancy.  (Crim. Doc. 238)

Cobb does not go so far as to claim that he would not have pleaded guilty if he had been correctly advised that he faced a five-year term of supervised release for Count Ten.  Nevertheless, he would be entitled to no relief on such claim because the term of supervised release was corrected in the presentence report and Cobb neglected to move to withdraw his guilty plea after the district court imposed a five-year term of supervised release for Count Ten, which was longer than the three-year maximum stated in the plea colloquy.  *See United States v. Brown*, 586 F.3d 1342, 1346 (11th Cir. 2009) (ruling that although the defendant was incorrectly advised during the plea hearing about the length of supervised release, the Rule 11 violation did not invalidate a guilty plea because the presentence report correctly stated the maximum term of supervised release); *United States v. Nelson*, 370 F. App'x 15 (11th Cir. 2010) (same); *see also Cubero v. United States*, No. 17-13736, 2018 WL 11397991, at *5–6 (11th Cir. Jan. 5, 2018) (denying a certificate of appealability because although the defendant was incorrectly advised during the plea hearing about the length of supervised release, the presentence report correctly stated that he faced a life term and he did not object to the presentence report).  Accordingly, Cobb fails to show that his guilty plea was involuntary, unknowing, or caused by ineffective assistance of counsel.

**B.    Ground Three: Ineffective Assistance for Not Suppressing Evidence**

In Ground Three, Cobb claims that trial counsel was ineffective for not suppressing evidence that he believes law enforcement illegally seized during a non-consensual traffic stop, a trash pull that he believes never occurred, and a search of his residence.  He argues that trial counsel's failure to effectively litigate the Fourth Amendment issues prejudiced him by forcing him to plead guilty to avoid a life sentence.  (Civ. Doc. 88-2 at 25)

Cobb waived this claim with his knowing and voluntary guilty plea.  After pleading guilty, a § 2255 movant may not raise claims relating to the alleged deprivation of constitutional rights that occurred before the entry of the guilty plea, but may raise only jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from counsel in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986).  All pre-plea ineffective-assistance-of-counsel claims are waived by the entry of a guilty plea.  *See Wilson*, 962 F.2d at 997.

A guilty plea also prevents a defendant from challenging the constitutionality of "case-related government conduct that takes place before the plea is entered."  *Class v. United States*, 583 U.S. 174, 182 (2018) (citing *Haring v. Prosise*, 462 U.S. 306, 320 (1983) (holding that a valid guilty plea "results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence

obtained in violation of the Fourth Amendment")).  Thus, once a defendant enters a knowing and voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

During the plea colloquy, Cobb specifically acknowledged his understanding of this waiver.  The district court asked Cobb, "do you understand that by pleading guilty, if you have any defense to the charges or any objection to the evidence or how the charges were brought against you, by pleading guilty, you're waiving any right to make objections to those matters?[,]" to which Cobb responded, "Yes, ma'am." (Crim. Doc. 134 at 24)  Furthermore, Cobb confirmed that he had "fully discussed with [his] attorney the discovery in the case, as well as any investigations that might need to be conducted[,]" and repeatedly expressed his satisfaction with counsel's advice and representation. (*Id.* at 10–11)  Cobb advances no argument or evidence to disavow his sworn confirmation that he understood he was waiving his right to challenge the manner in which the United States obtained evidence against him and that he was satisfied with trial counsel's representation.

Alternatively, Cobb is entitled to no relief on this claim because he cannot show counsel's performance was ineffective or prejudicial.  "A failure to file a motion to suppress that is based on a lack of knowledge of the state of evidence due to counsel's misunderstanding or ignorance of the law or failure to conduct adequate investigations can satisfy *Strickland*'s deficiency prong." *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010).  However, the record shows that trial counsel's decision not to file a motion

to suppress was not the result of misunderstanding, ignorance of the law, or an inadequate investigation. Rather, the record shows that Cobb's concerns regarding the seizure of evidence were extensively and repeatedly litigated throughout the prosecution. Indeed, at sentencing, when Cobb again sought to withdraw his guilty plea and to disqualify counsel, the district court reminded Cobb that both trial counsel and the district court had addressed his concerns regarding the seizure of evidence during the traffic stop, the trash pull, and the search of his home, and had resolved those issues in accordance with the law. (Crim. Doc. 238 at 6–15, summarizing extensive litigation at various hearings regarding Cobb's repeated complaints).

The record shows that trial counsel "didn't feel in good faith [he] could file a motion to suppress on the facts that [he] was aware of." (*Id*. at 11) Consistent with that belief, in his responsive affidavit, counsel avers (Civ. Doc. 45-1 at 4):

> Mr. Cobb was the subject of two searches one of a car he was driving and another of his home. Both of those searches yielded evidence that negatively impacted Mr. Cobb's case. I spent in excess of twenty hours reviewing those searches and in legal research attempting to uncover a legal basis for suppression of the searches. Additionally, I obtained the consent of Magistrate Pizzo and of counsel for the government to review and copy the original sealed search warrant court files. On October 1, 2014, I reviewed the copies of the sealed files with Mr. Cobb. Unfortunately, there was no factual or legal basis to allege that the searches were illegal. I conveyed this information to Mr. Cobb on multiple occasions.

Instead of moving to suppress, trial counsel strategically chose to lodge objections to the presentence report regarding the traffic stop and trash pull. (Crim. Doc. 128 at 33) After hearing testimony and argument, the district court overruled those objections

finding that "the government has adequately and sufficiently established the facts as set forth in Paragraphs 10 and 12 of the presentence investigation report." (*Id*. at 166–67)  Cobb's claim essentially amounts to his disagreement with trial counsel's strategic choice not to file a motion to suppress and instead to file objections to the presentence report.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"  *Strickland*, 466 U.S. at 690.  And, the fact that trial counsel's objections to the presentence report were unsuccessful does not prove ineffective assistance of counsel.  *See Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010).

### C.    Ground Four: Ineffective Assistance of Appellate Counsel

In Ground Four, Cobb claims appellate counsel was ineffective for not challenging the validity of his guilty plea.  (Civ. Doc. 88 at 8 and 88-2 at 29–32; Civ. Doc. 96 at 17–18)  He repeats that his guilty plea was invalid because he did not receive notice of the essential elements and penalties of the enhanced sentence under § 924(e), and he claims appellate counsel was constitutionally ineffective for not challenging his guilty plea on this basis.

Claims of ineffective appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.  *Dell v. United States*, 70 F.3d 1267, 1273 (11th Cir. 2013).  In the appellate context, "it is difficult to demonstrate that counsel was incompetent."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted).  "Appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on

18

appeal." *Id*. Indeed, a "brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up on strong and week contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). "[The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted). And, "appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." *Siler v. United States*, 852 F. App'x 490, 492 (11th Cir. 2021) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)).

Appellate counsel challenged Cobb's sentence and argued that the district court (1) clearly erred in estimating the loss amount and the number of victims and in calculating the amount of restitution; (2) erred by applying the vulnerable-victim enhancement, and (3) plainly erred by imposing an enhancement for production of an unauthorized access device and by sentencing Cobb as an armed career criminal. *Cobb*, 842 F.3d at 1215. The circuit court rejected each of these arguments and affirmed Cobb's sentence. *Id*. at 1218–23.

Cobb cannot show that a challenge to the validity of his guilty plea is clearly stronger than the sentencing issues appellate counsel pursued because, as explained *supra*, his guilty plea was knowing and voluntary. And, Cobb fails to show that, but

for any errors during his plea colloquy, he would not have pleaded guilty and would have proceeded to trial. The record shows that Cobb pleaded guilty because he is, in fact, guilty and that he voluntarily chose to plead guilty on the morning of trial. Appellate counsel was not ineffective for not raising a meritless challenge to the validity of his guilty plea. *See Siler*, 852 F. App'x at 492 (affirming that appellate counsel was not ineffective for not raising a meritless challenge to the district court's response to a jury question); *see also Cubero*, No. 17-13736, 2018 WL 11397991, at *5–6 (denying a certificate of appealability because appellate counsel was not ineffective for not challenging a guilty plea on the basis of the district court's incorrect advice regarding the maximum term of supervised release).

### D.   Ground Five: *Rehaif* Error

In Ground Five, Cobb claims that his firearm possession conviction is unconstitutional after *Rehaif*, 588 U.S. at 227, which holds that to convict a defendant under 18 US.C. § 922(g), the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [as a felon] when he possessed it." Cobb argues that the district court failed to inform him during the plea colloquy that an element of his offense was knowledge of his status as a felon. According to Cobb, this *Rehaif* error resulted in a plea that was unknowing and involuntary.

Cobb's claim lacks merit because the record contains sufficient evidence that Cobb knew he was a felon when he possessed the firearm. *See Rehaif*, 588 U. S. at 233–34 (noting that the United States' obligation to prove knowledge-of-status is not

"burdensome" because "knowledge can be inferred from circumstantial evidence"); *see also Greer v. United States*, 593 U.S. 503, 508 (2021) ("If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets.") (quotations omitted). "[H]ad the government been required to prove that [Cobb] knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to show that it would have easily done so." *United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020).

The presentence report details Cobb's prior felony convictions. According to the portions of the presentence report to which Cobb did not object, he pleaded guilty to, and was convicted of, trafficking marijuana and being a felon in possession of firearm, for which he served 41 months. Crim. Doc. 128 at ¶ 71*; see United States v. Cobb*, 8:07-cr-401-JSM-TGW; *see also United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). He was also convicted in a Florida state court of trafficking cocaine, for which he served three years. (Crim. Doc. 128 at ¶¶ 69–70) Given his prior felony convictions, the length of his sentences, and the fact that he served over six years in prison for his felony convictions, Cobb could not have credibly argued that he did not know he was previously convicted of a felony when he possessed the firearm. *See Bates*, 960 F.3d at 1296 (finding that the defendant's seven prior felony convictions provided "overwhelming evidence" that the defendant knew he was a felon); *United States v. McLellan*, 958 F.3d 1110, 1119–20 (11th Cir. 2020)

(finding it "inconceivable" that the defendant did not know he was a felon when he served ten years in prison).

Cobb does not assert that he would have proceeded to trial rather than enter his guilty plea but for the *Rehaif* error, nor does he identify evidence upon which he could have relied to suggest that he did not know he was a felon when he possessed the firearm. *See Greer*, 593 U.S. at 510 (holding that the defendant could not show there was a reasonable probability he would have gone to trial rather than plead guilty when he neglected to argue "that [he] would have presented evidence at trial that [he] did not in fact know [he was a] felon"); *see also United States v. Roosevelt Coats*, 8 F.4th 1228, 1238 (11th Cir. 2021) ("Defendant's failure to attempt an explanation as to why awareness of the knowledge-of-status element would have caused him to reconsider his choice to plead guilty is unsurprising. The record here demonstrates that the Government could have readily proven beyond a reasonable doubt that Defendant had the relevant knowledge."); *United States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020) (finding that the defendant "can point to no convincing reason to think he did not know of his prohibited status despite being convicted of four felonies"). Accordingly, Cobb's *Rehaif* claim lacks merit.

## III.   Conclusion

Cobb's motion under 28 U.S.C. § 2255 (Civ. Doc. 88) is **DENIED**. Cobb's motion for appointment of counsel and an evidentiary hearing (Civ. Doc. 97) is **DENIED AS MOOT**. The Clerk is directed to enter judgment against Cobb,

terminate any pending motions, and close this case. The Clerk is further directed to enter a copy of this order in the criminal action and terminate the motions at docket entries 380 and 396 in the criminal action.

Cobb is not entitled to a certificate of appealability.  To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Cobb fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on December 12, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Pro Se Petitioner
Counsel of Record